UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VALERIE KLINE,<br><br>Plaintiff,<br><br>v.<br><br>SETH M. WILLIAMS, et al.,<br><br>Defendants. | Civil Action 05-01102 (HHK) |

MEMORANDUM OPINION AND ORDER

Valerie Kline brings this action against Seth M. Williams, Anne La Londe, and Steven La Londe (collectively, "defendants") for (1) copyright infringement; (2) conspiracy, threats, harassment, and intimidation; (3) false light; and (4) libel, slander and defamation of character. Defendants are in default, and Kline seeks $450,000 in damages. However, because the court is not satisfied that it has personal jurisdiction over defendants, Kline is hereby ordered to show cause as to the basis for such jurisdiction.

I.  FACTUAL BACKGROUND

As alleged by Kline, during Fall 2002 she created several self-portraits in digital format and subsequently fixed these images on canvas for oil painting. Approximately one year later, she transmitted digital copies of several of these self-portraits to defendant Williams and obtained assurances that they would neither be divulged nor distributed. Sometime thereafter, Williams transferred several, if not all, of these images to defendants Steven and Anne La Londe. In July 2004, the La Londes created a website impersonating Kline on which they posted "modified, distorted, and disfigured" versions of her self-portraits. Am. Compl. at ¶ 9. This

1

website also divulged Kline's personal information and contained numerous derogatory comments about her.  That same month, both Williams and the La Londes posted derogatory statements on a LiveJournal[1] account maintained by Kline.  The La Londes additionally created their own LiveJournal account on which they impersonated Kline via a "satanic site theme" and made further "defamatory and degrading" comments.  Am. Compl. at ¶¶ 17–19.  Defendants also created a Paltalk[2] account that contained the modified self-portraits of Kline.  The following Winter, defendants made derogatory statements about Kline in public Paltalk chat rooms containing individuals with whom Kline was acquainted.  Lastly, in April 2005, defendant Anne La Londe transmitted Kline's self-portraits and personal information to one or more individuals over the Internet in order to prevent her from joining Christian Yahoo! Groups.[3]

On May 27, 2005, Kline instituted this action.  Defendants failed to file a response and as a result are now in default.  Kline filed a motion for a hearing on damages, which was initially granted.  However, because she has insufficiently pled grounds upon which personal jurisdiction may rest, the hearing on damages has been cancelled and Kline is ordered to show cause for the reasons that follow.

---

[1] LiveJournal is a website that allows its members to share commentary and images via their own webpage and permits other members to respond to such postings.

[2] PalTalk is an online service that provides users access to chat rooms and instant messages programs.  PalTalk users can set up an online profile featuring photos and a range of personal information.

[3] Yahoo! Groups are online communities that interact via a bulletin-board style web service.  Each group has a particular theme, and access to many groups requires explicit permission by the groups organizers.

## II.  DISCUSSION

A.   **Entry of Default Judgment**

Typically, a court may not address the issue of personal jurisdiction *sua sponte*. However, where a defendant is in default "a court should satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant." *Mwani v. Bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005).  Although personal jurisdiction is a matter generally waived if not raised by motion or responsive pleading, jurisdictional defects "are not waived by default when a party fails to appear or to respond." *Dennis Garberg & Assocs. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997), *cited in Mwani*, 417 F.3d at 6 n.4.  Moreover, the usual concerns requiring personal jurisdiction to be waived if not raised by motion or pleading—"the possible unfairness in rejecting a suit after considerable time and expense has been invested," *Buchanan v. Manley*, 145 F.3d 386, 388 (D.C. Cir. 1998) (internal quotations omitted)—are  not present when the court raises the issue at the outset of a case.  Thus in the case at hand, the court has an affirmative duty to look into its jurisdiction over the parties.

In order to satisfy the court that it may enter a default judgment against defendants, Kline must make a prima facie showing that personal jurisdiction is proper in this case. *Mwani*, 417 F.3d at 10.  To establish a prima facie case, she is not limited to evidence meeting the standards of admissibility reserved for summary judgment and trial; rather, her argument may rest on the pleadings, bolstered by such affidavits and other written materials as she can otherwise obtain. *Id.* at 10–11.  Because Kline's submissions to the court fail to allege adequate grounds for personal jurisdiction, a prima facie case has not been established.

3

**B.      Personal Jurisdiction**

The context of the challenged conduct at hand—cyberspace communication—presents the difficult yet extremely important task of adapting traditional standards of personal jurisdiction to Internet activity. Although cases applying personal jurisdiction analysis to the Internet are relatively scarce, these cases make clear that the advent of the Internet should not "vitiate long-held and inviolate principles of federal court jurisdiction." *GTE New Media Servs., Inc. v. Bellsouth Corp.*, 199 F.3d 1343, 1350 (D.C. Cir. 2000). "Just as our traditional notions of personal jurisdiction have proven adaptable to other changes in the national economy, so too are they adaptable to the transformations wrought by the Internet." *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 510–11 (D.C. Cir. 2002). Therefore, mere allegation that the conduct in question occurred via the Internet, without more, is insufficient to satisfy the jurisdictional limitations imposed by District law and the federal Constitution.

Absent some special provision, the jurisdictional reach of a federal court is the same as that of a state court of general jurisdiction in the state where the federal court sits. *See* FED. R. CIV. P. 4(k)(1)(A); *Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987); *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 222–23 (2d Cir. 1963) (en banc); *Ramamurti v. Rolls-Royce, Ltd.*, 454 F. Supp. 407, 408 (D.D.C. 1978), *aff'd mem.*, 612 F.2d 587 (D.C. Cir. 1980). Therefore, the jurisdictional reach of the court in this case is determined by the District of Columbia's long-arm statute, subject to a further demonstration that the court's exercise of jurisdiction would be consistent with constitutional due process requirements. *See* U.S. CONST. amend. V & XIV; *International Shoe Co. v. Washington*, 326 U.S. 310 (1945); *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995); *Crane*, 814 F.2d at 762. In order to determine whether it may

exercise personal jurisdiction over defendants here, this court must make a two-part inquiry. It must first examine whether personal jurisdiction would be proper under the District's long-arm statute. It then must determine whether the exercise of personal jurisdiction would be consistent with the due process requirements of the Federal Constitution. *See GTE New Media Servs.,* 199 F.3d at 1350. At this point, neither prong of the two-part inquiry has been satisfied.

### 1. *District of Columbia Long-Arm Statute*

The District's long-arm statute provides, in relevant part,[4] that:

> a District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's . . . (4) causing tortious[5] injury in the District of Columbia if he [i] regularly does or solicits business, [ii] engages in any other persistent course of conduct or [iii] derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

D.C. CODE ANN. § 13-423(a). Accordingly, to satisfy this provision, Kline must make a prima facie showing that: (1) she suffered tortious injury in the District of Columbia; (2) the injury was caused by the defendant's act or omission outside of the District of Columbia; and (3) defendants had one of the three enumerated contacts with the District of Columbia. *GTE New Media Servs.*, 199 F.3d at 1347. These enumerated contacts, often referred to as "plus factors," need not be

---

[4] The District's long-arm statute also permits the exercise of personal jurisdiction over a claim for relief arising from a person's "transacting any business in the District of Columbia." D.C. CODE ANN. § 13-423(a)(1). Although Kline is not precluded from relying on this section of the long-arm statute, such reliance seems highly unlikely considering the provision's limited application to "contractual activities" in the District. *See Mouzavires v. Baxter*, 434 A.2d 988, 992 (D.C. 1981). If applicable, however, the clause generally has been interpreted as coextensive with the Constitution's due process limitations, and thus the otherwise two-part inquiry merges into a singular one. *See GTE New Media Servs.*, 199 F.3d at 1347.

[5] Copyright infringement is treated as tortious activity for the purpose of construing a state long-arm statute. *See Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829 (11th Cir. 1990) ("[T]he breach of a common law copyright subjects the wrongdoer to liability in tort within the reach of the Florida long-arm statute").

related to the tortious act in question; rather, they serve as a "reasonable connection" between the defendant and the forum, "filter[ing] out cases in which the inforum impact is an isolated event and [in which] defendant otherwise has no, or scant, affiliations with the forum." *Crane*, 814 F.2d at 763.

      Under the first prong of the long-arm statute inquiry, Kline has failed to show tortious injury *in the District of Columbia*. Although the allegedly defamatory posts and infringed self-portraits were accessible to Internet users within the District, there is nothing in her pleadings that indicates she "suffered any injury in the District of Columbia that [she] could not have suffered in any state in the nation where someone may have read the message and reacted negatively towards [her]." *Mallinckrodt Medical, Inc. v. Sonus Pharm., Inc.*, 989 F. Supp. 265, 273 (D.D.C. 1998). In *Mallinckrodt*, the plaintiff claimed that a derogatory posting on an AOL bulletin board caused injury in the District because this posting was accessible to 200,000 AOL subscribers in the District. *Id.* at 272. However, because plaintiff neither worked nor lived in the District, the injury felt in the forum was indistinguishable from that felt anywhere AOL subscribers resided. *Id.* at 273. Exercising personal jurisdiction in such cases would in essence create a "nationwide jurisdiction for defamation action" explicitly banned by prior caselaw. *Id.* By contrast, in *Blumenthal v. Drudge*, 992 F. Supp. 44 (D.D.C. 1998), White House employees defamed by an online gossip columnist did live and work in the District and thus suffered an injury *in the District* that was distinct from injuries felt in other states.

      Here, there is no indication that Kline suffered any harm particular to the District of Columbia. To the contrary, she maintains that she is a resident of Maryland and fails to mention any particular link between her and the District that would yield a distinct harm here. Based on

the submissions to the court, there is no reason to believe that this court is better suited to exercise personal jurisdiction over defendants than any other court in the nation, and doing so would potentially establish the District of Columbia as a "nationwide jurisdiction" for tortious activity committed via the Internet.

The second prong of the long-arm statute is also insufficiently satisfied, as the pleadings fail to establish that the tortious activity in question took place outside of the District. "In cases involving the posting of infringing material on an Internet web site, courts have held that the tort occurs where the web site is created and/or maintained, usually where the server supporting the web site is located, not where the Internet web site can be seen, because that would be literally anywhere the Internet can be accessed." *Cable News Network v. GOSMS.COM, Inc.*, 2000 WL 1678039, at *3 (S.D.N.Y. Nov. 6, 2000) (citing *Telebyte, Inc. v. Kendaco, Inc.*, 105 F. Supp. 2d 131, 134 (E.D.N.Y. 2000) and *Citigroup, Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 567 (S.D.N.Y. 2000)). Here, there is no indication of where defendants maintained their defamatory and infringing web sites nor in which states the relevant servers are located. Although this prong is likely easily met, it has yet to be shown.

Finally, Kline has failed to establish any of the "plus factors" required by the third prong of the long-arm statute. As there is no indication that defendants "regularly do or solicit business" or "derive substantial revenue" from the District, the only potentially applicable "plus factor" is that defendants engage in "any persistent course of conduct" within the District. However, prior decisions have made it clear that the mere maintenance of a website accessible to Internet users in the District does not amount to "any persistent course of conduct" within the meaning of the long-arm statute. *See GTE New Media Servs.*, 199 F.3d at 1349–50; *Blumenthal*,

992 F. Supp. at 56.  In *GTE*, the D.C. Circuit analogized access to a web site to "nothing more than a telephone call by a District resident to the defendants' computer servers."  199 F.3d at 1350.  Because "mere receipt of telephone calls outside the District does not constitute persistent conduct," accessing a web site similarly should not satisfy the demands of the long-arm statute.  *Id.* (citing *Tavoulareas v. Comnas*, 720 F.2d 192, 194 (D.C. Cir. 1983)).  Rather, in order for a web site to constitute persistent conduct within the District, it must at the very least allow "browsers to interact directly with the web site on some level."  *Blumenthal*, 992 F. Supp. at 56.  Moreover, courts in the District have required at least some non-Internet related contacts between defendant and the forum in order to find "persistent conduct."  *See Blumenthal*, 992 F. Supp. at 57 (finding "persistent conduct" where defendant maintained an interactive website accessible in the District, solicited and received contributions from the District, interviewed with C-SPAN in the District, and procured gossip from District residents); *Heroes, Inc. v. Heroes Found.*, 958 F. Supp. 1 (D.D.C. 1996) (finding "persistent conduct" where defendant maintained a website accessible in the District and placed an advertisement in the Washington Post).[6]  Here, plaintiff has failed to allege any non-Internet contacts between defendant and the forum, and the sole link between the District and defendants appears to be the accessibility of defendant's web sites and Internet postings from the District.  While perhaps websites and online postings could exhibit such a high level of interactivity between defendants and the District that they could by

---

[6] Although *Heroes* apparently found "persistent conduct" based on a web site alone, 958 F. Supp. at 5, such a finding was seemingly overruled by *GTE,* 199 F.3d at 1349 ("access to defendants' websites . . . does not by itself show any persistent course of conduct).  However, other bases for personal jurisdiction were present in *Heroes* which, combined with web site access, support a finding of "persistent conduct" in a manner harmonious with subsequent case law.

themselves give rise to "persistent conduct,"[7] Kline has not stated any grounds for distinguishing the interactivity of the web sites, chat rooms and bulletin boards in this case from those involved in prior cases. She thus has not met her burden of establishing "persistent conduct" or any other "plus factor" required to satisfy the District's long-arm statute.

   *2. Due Process*

Kline has also failed to show that personal jurisdiction over defendants would comply with constitutionally-mandated Due Process. Even if the terms of the long-arm statute are satisfied, she must still show that the exercise of personal jurisdiction in the case at hand does not exceed the permissible bounds of the Due Process Clause. Due Process is satisfied where a plaintiff shows "minimum contacts" between the defendant and the forum, ensuring that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316. Under this standard, "defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "Jurisdiction in these circumstances may not be avoided merely because the defendant did not physically enter the forum." *Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985). Rather, "so long as an actor's

---

   [7] A highly interactive website has been found sufficient on it own to satisfy the "transacting business" provision of D.C. Code § 13-423(a)(1). *See Arista Records, Inc. v. Sakfield Holding Co.*, 314 F. Supp. 2d 27, 31 (D.D.C. 2004) (finding the downloading of music files from an online subscription music service to constitute "transacting business in the District"). However, because this provision is interpreted as coextensive with due process where applicable, *see supra*, note 4, a single act by defendant can satisfy it so long as such act gives rise to plaintiff's claim. *See Arista Records*, 314 F. Supp. 2d at 30–31. By contrast, the "persistent conduct" provision of the long-arm statute has been interpreted more narrowly than the limits of due process, *Crane*, 814 F.2d at 762, and it seems unlikely that a single contact with the District such as in *Arista* could constitute "persistent conduct" within the meaning of the statute. Section 13-423(a)(4) thus seemingly presents Kline a significantly greater hurdle.

efforts are 'purposefully directed' toward residents of another forum," the Constitution's due process requirements are satisfied despite the absence of physical contacts. *Id.* at 476 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).

Mere accessibility of a web site posting from the District does not establish "minimum contacts" with the forum. *GTE New Media Servs.*, 199 F.3d at 1350. If such accessibility were to provide a constitutionally-sufficient nexus between defendant and the forum, "personal jurisdiction in Internet-related cases would be found in any forum in the country." *Id.* Because such an expansive theory of Internet jurisdiction "would shred constitutional assurances" of predictability within our legal system "out of practical existence," the D.C. Circuit and its sister circuits have rejected web site accessibility as the sole basis for finding "minimum contacts." *Id.*; *see also ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 713–15 (4th Cir. 2002); *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1297 (10th Cir. 1999); *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 29 (2d Cir. 1997); *Mink v. AAA Dev. LLC*, 190 F.3d 333, 336–37 (5th Cir. 1999); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997).

Although web site accessibility does not by itself create sufficient "minimum contacts," if tortious activity occurring on such web sites is intended to cause injury in the forum state, jurisdiction may attach. *GTE New Media Servs.*, 199 F.3d at 1349. Under the so-called "effects doctrine," personal jurisdiction may rest upon "(1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered — and which the defendant knows is likely to be suffered — in the forum state." *Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1318 (9th Cir. 1998), *cited in GTE New Media Servs.*, 199 F.3d at 1349; *see also Calder v. Jones*, 465 U.S. 783 (1984) (establishing an "effects test" for personal jurisdiction); *Mwani*, 417 F.3d at 4;

*Doe v. State of Israel*, 400 F. Supp. 2d 86, 110 (D.D.C. 2005). In *Panavision*, the defendant intentionally registered the plaintiff's trademarks as his website domain names in order to extort money from the plaintiff. 141 F.3d at 1321. Although the court agreed that the mere posting of infringing trademarks online would be insufficient on its own to subject a defendant to jurisdiction in the forum state, it held that personal jurisdiction was proper because the defendant's conduct had been purposefully directed towards the forum state. *Id.* at 1322. His conduct had the effect of injuring the plaintiff in California—the state in which it had its principal place of business and in which the entertainment industry was centered—and the plaintiff knew that the brunt of such injury would be felt in California. *Id.* Although tortious Internet activity by itself does not create constitutionally-sufficient "minimum contacts" to subject a defendant to personal jurisdiction in every state where harm may be felt, such contacts are created where the defendant conducts this activity with the knowledge that such harm will be particularly felt in the forum state.[8]

---

[8] The Fourth Circuit has formulated a three-part test that adeptly incorporates the principles delineated above:
> [A] State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.

*ALS Scan*, 293 F.3d at 714. "Under this standard, a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is received." *Id.* Thus, the test adopts the principle that mere access to a web site from the forum state is insufficient, by itself, to yield personal jurisdiction. Additionally, it explicitly adopts the precepts of the *Calder* effects-based test for personal jurisdiction:
> Under the standard we adopt and apply today, specific jurisdiction in the Internet context may be based only on an out-of-state person's Internet activity directed at [the forum state] and causing injury that gives rise to a potential claim cognizable [there].

*Id.* Although no court in this circuit has expressly adopted the Fourth Circuit test, it appears fully consistent and compatible with this circuit's Internet jurisdiction precedents.

In this case, Kline has failed to show that defendant's actions were purposefully directed at the District of Columbia. Although it is apparent that these actions were directed at her, there is no indication that such actions were expressly aimed at this forum or that defendants knew that any injury, let alone the brunt of it, would be felt in the District. Kline has not established any link between her and the District which would reasonably give notice to defendants that the injury resulting from their online activities would occur within the District. To the contrary, she states that she is a resident of the state of Maryland. Absent additional information it would seem a more reasonable inference that the brunt of harm would be felt in Maryland and not in the District.[9] Kline has not claimed to work in the District, to have any close connections with the District, or even to regularly visit the District. This court thus sees no basis on which to infer that defendants expressly aimed their actions at this forum. Kline has so far failed to establish any link between defendants' activities and the forum state that would justify their submission to this court's jurisdiction.

---

[9]However, knowledge that plaintiff is a resident of a particular state does not necessarily yield personal jurisdiction over an out-of-state tortfeasor. In addressing online defamation suits, other jurisdictions have required the forum to be the "focal point" of defamatory statements. *See Griffis v. Luban*, 646 N.W.2d 527, 535–37 (Minn. 2002); *Novak v. Benn*, 896 So.2d 513, 516–20 (Ala. Civ. App. 2004) (citing *Griffis*). For example, in *Griffis* a Minnesota resident had posted a defamatory remark about plaintiff, an Alabaman instructor on Egyptology, on an archaeology newsgroup. 646 N.W.2d at 529. Although defendant knew that plaintiff was a resident of Alabama, there was no evidence that the posting was aimed at an Alabama audience, that any Alabamans had read the statements, or that the state of Alabama had a unique relationship to the field of Egyptology. *Id.* at 535–37. The court therefore held that plaintiff had failed to demonstrate that defendant's statements were "expressly aimed" at the state of Alabama so that Alabama was the "focal point of tortious activity." *Id.*

### III.  CONCLUSION

For the foregoing reasons, it is this 23rd day of March, 2006, hereby

**ORDERED** that, by no later than April 17, 2006, Kline shall show cause why personal jurisdiction over defendants is proper.

> Henry H. Kennedy, Jr.
> United States District Judge